# Daniel McCafferty, Plff. in Err., *v.* Thomas Brady and Margaret, His Wife, in Right of Said Wife.

A bailee for safe keeping must return the thing bailed to the bailor, or according to the bailor's directions. He cannot require proof that the bailor is also the owner.

It is no defense to an action of assumpsit by the bailor against the bailee, for money deposited for safe keeping, to allege that the money belonged to a third person.

(Argued January 6, 1887. Decided March 21, 1887.)

January Term, 1886, No. 276, E. D., before MERCUR, Ch.

NOTE.—Where the property is claimed by the true owner, the bailee may deliver the property to him. King v. Richards, 6 Whart. 418, 37 Am. Dec. 420; Floyd v. Bovard, 6 Watts & S. 75. A mere notice by a third party not

J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Error to Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for the plaintiffs in an action of assumpsit. Affirmed.

At the trial before WILSON, J., the following facts appeared;

Sarah McGoldrick died at Orange, New Jersey, about November 3, 1881, intestate, and leaving five or six collateral heirs. She had previously been making her home with a Mrs. Manning, in New York.

In November, 1881, Daniel McCafferty and Margaret Brady went to New York and called on Mrs. Manning. There Daniel McCafferty had delivered to him by Margaret Brady, or by Mrs. Manning for Margaret Brady, $500, which appears to have been given to Mrs. Manning by Sarah McGoldrick, deceased, and which she, Mrs. Manning, evidently understood was to be given to Margaret Brady.

Sarah McGoldrick did not make a will, but a writing was found unsigned by her, in which $500 was given to Margaret Brady. This $500 went into the hands of Daniel McCafferty, all evidently regarding it as the property of the defendant in error. He took the money home, put it in a bag, and put the bag in a drawer in his safe, where he kept his own money and other valuables. He did not attempt to exercise any control over it, and at one time told his wife to give it to Margaret Brady. At another time, he said he would not let her have it; that he would rather burn it, some bitterness of feeling having arisen between Daniel McCafferty and Margaret Brady.

No demand was made on him for this money until May, 1883. About four months before that time, his wife, who was the sister of Margaret Brady, had died. Upon receiving the note demanding the $500 in question, he went to his safe where he had placed the money, and found that it was gone. He swore that he believed his wife had given the money to Margaret Brady, as no other person had access to the safe. He declined to pay the $500 to Margaret Brady, unless she would take out letters of administration upon the estate of her aunt, Sarah Mc-

to deliver to the bailor is no defense. Susquehanna Boom Co. v. Rogers, 3 W. N. C. 478. If the goods are taken from the bailee's possession by legal process, he will not be liable to the bailor therefor. Act of June 13, 1874 (P. L. 285).

Goldrick, deceased; whereupon, Thomas Brady and the said Margaret, his wife, brought this suit to recover the $500.

The charge of the court was as follows:

The plaintiff asks a verdict in her favor for $500, which she says she placed in the hands of the defendant for safe keeping, under an express promise on his part to return it to her when requested.

The defendant does not deny that he received such a sum of money; but he does deny getting it in such a manner as makes it his duty to return it to the plaintiff.

It is conceded on all sides that the money to which the controversy relates was at one time in the hands of a Mrs. Manning, who was a friend of Sarah McGoldrick, a relative of the plaintiff as well as of the wife (now deceased) of the defendant. Sarah McGoldrick had died, and her effects appear to have been left in the hands of Mrs. Manning.

The plaintiff claims that the money had been given to her, and that she received it from Mrs. Manning for her own use and property.

It is not at all clear to my mind, on her testimony, that she acquired this money in such a way as made it her own, but she does say distinctly that she received it; and further, that she placed it in the custody of the defendant under an express agreement on his part to return it to her whenever she should ask for it. On the contrary, he asserts that the money was received by him from Mrs. Manning, and denies any such promise. He says that the money was put by him in a bag, and in a safe belonging to him, and that in some manner unknown to him it disappeared. He also said that he was in the habit of keeping his own money in the same place, but that none of that was lost.

On these facts, and the whole evidence in the case, I instruct you that if you believe from the evidence that the money in question belonged to the plaintiff, that she had acquired the ownership of it, and that the defendant received it from her for safe keeping, to be repaid when demanded, she is entitled to a verdict for the $500, unless you also believe from the evidence that he took such reasonable care of the money as a prudent man would have taken of his own money, and that it was lost or stolen, or in some way disappeared without his connivance.

I also give you the same instructions if you shall believe from

the evidence that the only right which the plaintiff acquired in the property was to hold it until some legal representative of the estate of the deceased Sarah McGoldrick should be appointed, although she had received no letters of administration. If Mrs. Manning placed the money as the property of this dead woman in the hands of the plaintiff, who then put it in the care of the defendant, she has, in my judgment, as a sort of bailee, or trustee, the right to demand the return of the money to her by him, and to recover a verdict against him for the amount stated, unless, as I have before said, he is excused from the obligation of repayment by the loss of the money without his fault. Such loss would be a sufficient excuse if it is satisfactorily shown.

If you are with the plaintiff, however, in your judgment of the case upon the evidence, you will naturally scrutinize care-fully the testimony in regard to this excuse, for the reason that it can so easily be made, and with such difficulty be directly refuted.

If, however, the money was placed in the hands of the de-fendant alone by Mrs. Manning, or in the hands of himself and the plaintiff jointly, as the property of the deceased Sarah McGoldrick, then the verdict should be in his favor.

The defendant submitted, *inter alia*, the following point:
"1. If the jury believe that the money for which this suit has been brought was money belonging to the estate of Sarah McGoldrick, deceased, your verdict should be for the defendant, as no person is entitled to that money except the executor or ad-ministrator of the estate of Sarah McGoldrick."

*Ans.* "I decline to affirm this point. In my general charge I have sufficiently stated my views upon the question raised."

Verdict and judgment were for the plaintiff for $500.

The assignments of error specified the charge of the court and the answer to the point quoted.

*Edward C. Quin,* for plaintiff in error.—The testimony on the subject of the ownership of the money is clear, consistent, and uncontradictory.

It established that the money in question belonged to Sarah McGoldrick at the time of her death, and that she died intes-tate. This being conceded, the money went to her adminis-trators and not to Margaret Brady.

It was therefore the duty of the court to withdraw the case from the jury, and to say to them that the evidence was not sufficient to support the plaintiff's claim. Weidler v. Farmers' Bank, 11 Serg. & R. 134; Hyatt v. Johnston, 91 Pa. 196; Angier v. Eaton, C. & B. Co. 11 W. N. C. 146.

To leave a fact to the jury without any evidence is manifest error. Calvert v. Good, 95 Pa. 65; Wingerd v. Fallon, 95 Pa. 184; Junior Steam Fire Engine Co. v. Douglas, 2 Pennyp. 63.

Where the language of the charge as to the true character of the testimony tends to mislead the jury, it is error and a ground for reversal. Fawcett v. Fawcett, 95 Pa. 376.

The plaintiff below, by taking the assets of the dead woman and claiming them as her own, thereby became an executor *de son tort;* and by committing that wrong she could acquire no right. Meigan v. M'Donough, 10 Watts, 287.

If one who is neither executor nor administrator interferes with the goods of the deceased, or does any other act characteristic of the office of an executor, he thereby makes himself what is called in the law an executor of his own wrong, or more usually an executor *de son tort.* 1 Wms. Exrs. p. 296.

A very slight circumstance of intermeddling with the goods of the deceased will make a person executor *de son tort;* such as the milking of the cow by the widow, the taking of a dog, or the Bible, or the bedstead. 1 Wms. Exrs. p. 297.

Thus, where a son died in California, and his money was sent to his father; without more than the bare receipt of it, the father was held to be an executor *de son tort.* Emery v. Berry, 28 N. H. 473, 61 Am. Dec. 622; 1 Wms. Exrs. p. 305, note.

An executor *de son tort* cannot settle the estate of the deceased, nor make any valid disposition of the goods and effects; so that no trust can arise by any acts or doings of his in this commonwealth. The trust estate is not vested in him, nor does any trust devolve upon him in consequence of his unauthorized intermeddling. Campbell v. Sheldon, 13 Pick. 8.

The law holds such an executor to many liabilities, but gives him no action. Francis v. Welch, 33 N. C. (11 Ired. L.) 215.

The court declined to affirm the defendant's first point, although it was considered and ruled the other way in Lee v. Wright, 1 Rawle, 149.

A recovery in this case cannot be pleaded against a rightful administrator; and so much of the effects as belong to the intes-

tate may be recovered a second time from the defendant. Vin. Abr. 222-225.

Even in equity no such action could be suffered. Humphreys v. Humphreys, 3 P. Wms. 349.

The exigencies of the case do not require that there should be a positive demonstration of what were the views of the court on the point expressed in the general charge. It is enough if there be a doubt, for the dogma is: "To be in doubt is to be lost." An equivocal answer by the court to a pertinent point is ground for reversal. Foster v. Collner, 107 Pa. 305.

When a point is put to the court it is the duty of the court to put the matter in its true point of view, and tell the jury what the law is in the case before them. Hughes v. Boyer, 9 Watts, 556.

A party is entitled to a full, fair, and explicit answer to a prayer for instructions if pertinent. Hays v. Paul, 51 Pa. 134, 88 Am. Dec. 569; Noble v. M'Clintock, 6 Watts & S. 58.

It is error not to answer directly. Powers v. M'Ferran, 2 Serg. & R. 44, and Smith v. Thompson, 2 Serg. & R. 49; Fisher v. Larick, 3 Serg. & R. 319; Carpenter v. Mayer, 5 Watts, 483; Geiger v. Welsh, 1 Rawle, 349; Tenbrooke v. Jahke, 77 Pa. 392; Hood v. Hood, 2 Grant Cas. 229.

Where the point is based upon a hypothesis which is supported by actual testimony in the cause, the defendant has clear right to a definite instruction upon the effect of those facts. Allegheny Valley R. Co. v. Steel, 11 W. N. C. 113.

The judgment in the present case cannot be set up as a defense in the suit by the administrator. It will therefore be seen that unless this judgment is reversed, the plaintiff in error must pay the money twice.

*J. Levering Jones* and *A. A. Hirst,* for defendants in error. —The whole of the evidence taken here establishes the fact that Margaret Brady received this money from Mrs. Manning, either as a trustee for the heirs of Sarah McGoldrick, or that she received it from her as a gift to her, from Sarah McGoldrick *inter vivos*—Mrs. Manning being the mere intermediary for the transfer of the gift.

It may be fairly inferred from the evidence and the circumstances surrounding the transfer of the money from Mrs. Manning to Margaret Brady, or her bailee, the plaintiff in error in

this case, that the $500 was a gift to her, Margaret Brady, from Sarah McGoldrick.

The relationship of Margaret Brady to Sarah McGoldrick constituted a good consideration. This was a gift *inter vivos.* When the money was received by Mrs. Manning, the gift went into immediate effect. No actual delivery to the donee was necessary to vest the title (Crawford's Appeal, 61 Pa. 52, 100 Am. Dec. 609); and delivery may be to a third person as well as to the donee, and may be either symbolical or actual (Davis v. Ney, 125 Mass. 590, 28 Am. Rep. 272; Hill v. Stevenson, 63 Me. 364, 18 Am. Rep. 231; Meriwether v. Morrison, 78 Ky. 572).

Even if the $500 was not a gift by Sarah McGoldrick to Margaret Brady, the verdict should be sustained.

In the court below the two parties to this case gave their different versions of the events which took place at Mrs. Manning's house in New York. The jury—the only judges—decided that the story of Margaret Brady was the true statement of the facts, namely: Mrs. Manning gave her the money, and that subsequently she gave it to plaintiff in error. This makes him a bailee. Bates v. Stanton, 1 Duer, 79.

A bailee cannot in ordinary cases dispute the title of his bailor, any more than a tenant that of his landlord. Clark v. Gaylord, 24 Conn. 484; Story, Bailments, § 110.

A bailee cannot defend himself from an action to recover money deposited with him by showing that the bailment was fraudulent as against creditors of the bailor, and that the fraud was known to the plaintiff, without showing any attempt of such creditors to avail themselves of it. Brown v. Thayer, 12 Gray, 1.

The depositary must return the thing deposited only to him who deposited it, or in whose name the deposit is made, or who is appointed to receive it. He cannot require him who made the deposit to prove that he is the owner of the thing. Jenkinson v. Cope, 7 Mart. (La.) 284; Hendricks v. Mount, 5 N. J. L. 738, 8 Am. Dec. 623.

The counsel for Daniel McCafferty argues with great vehemence that Margaret Brady was an executor *de son tort,* and hence cannot recover. No case is cited by him which sustains this doctrine; nor can such an inference be drawn from an examination of the reported cases in this state.

An executor *de son tort, i e.,* a stranger who takes upon himself to act as executor without just authority (2 Bl. Com. 507), is only liable to account to the executor or administrator, and not to the next of kin. 2 Kent, Com. 11th ed. note, p. 415; Muir v. Leake & W. Orphan House, 3 Barb. Ch. 477.

And so in Pennsylvania: An executor *de son tort* is liable to the action of the lawful executor or administrator, or to that of a creditor. Stockton v. Wilson, 3 Penr. & W. 129, 130.

As Margaret Brady did not attempt to administer the estate, and as Daniel McCafferty is neither the lawful executor, administrator, nor a creditor, it is difficult to see the application of the plaintiff in error's argument on this point. He does not refuse because he asserts any right himself to the thing bailed, nor because he is either the lawful executor, administrator, or a creditor. He simply alleges a belief in the existence of a better title in some third person, and refuses to deliver to the defendant in error until she proves her title. In Lee v. Gibbons, 14 Serg. & R. 105, and Lee v. Wright, 1 Rawle, 149, the facts were in nowise analogous to those in the case now before the court.

The evidence as to the question of negligence was fairly left to the jury, and there was sufficient evidence of negligence to justify the submission of that question to the jury.

OPINION BY MR. JUSTICE TRUNKEY:

The plaintiff testified that she gave the money to the defendant for safe keeping, and that he was to return it to her whenever she asked for it. This money belonged to Sarah McGoldrick, at the time of her decease. Before bringing suit the plaintiff wrote to the defendant asking return of the money. He testified that when he received the note he had lost the money, and he did not deny that he had promised to return it to the plaintiff upon her request; but he says he received the money from the hand of Mrs. Manning.

The jury were warranted in finding that the owner or custodian of the money gave it to the defendant for safe keeping, by express agreement for its return on call. If they so found, they were instructed that the plaintiff was entitled to recover, unless the defendant had lost it without negligence or connivance on his part.

No excuse was shown by the defendant for violation of his promise. The trial was three years and six months after he re-

ceived the special deposit, and it did not appear that an admin-istrator claimed the money, or that he was willing to surrender it on any terms or conditions. His actual defense was that he had lost the money without fault, but the jury did not so find. Merely showing that the legal title was in the estate of a de-ceased person was not enough to relieve him from the obligation to return the money according to his agreement.

Judgment affirmed.